THE STATE OF OHIO, APPELLEE, *v.* SWITZER, APPELLANT.
(Two cases.)

[Cite as State v. Switzer, 18 Ohio App. 2d 183.]

(Nos. 333 and 334—Decided February 6, 1969.)

*Mr. Daniel Fedders* and *Mr. John T. Davidson,* for appellee.

*Messrs. Santen, Santen & Hughes* and *Mr. Franklin A. Klaine, Jr.,* for appellant.

HILDEBRANT, J. Defendant, after trial in the Municipal Court of Franklin, was found guilty of (1) the possession of undersized walleye pike and (2) the transportation of walleye pike without a transportation permit, in violation of Sections 1533.63 and 1533.301, Revised Code, respectively.

The facts are not in dispute that the defendant purchased 2,757 legal size walleye pike fish in Tilbury, Ontario, Canada, where the legal length is 14 inches, and transported them from Canada, through customs, and the states of Michigan and Indiana into Ohio from where he was intending to resell the fish for stocking purposes. He had no transportation permit, and the legal length for walleye pike in Ohio as fixed in accordance with the provisions of Section 1533.63, Revised Code, by the Chief of the Division of Wildlife is 15½ inches.

Agents of the Wildlife Conservation Department of Ohio stopped defendant in transit to Morrow, Ohio, where he planned to change the water on the fish and hold them for resale anywhere he could find a market, measured the fish, determined they were undersized and confiscated the same.

Defendant contends that, because the fish were legally purchased in Canada and transported through customs and two states, the regulations contained in Sections 1533.-63 and 1533.301, Revised Code, may not be legally enforced against him and that he is being deprived of his property without due process of law.

The holdings in similar cases of similar regulations in different states and jurisdictions are not uniform. The court has examined all the citations on both sides.

The court must conclude that the police power of the state extends to a proper regulation of the handling of fish although purchased legally outside the state and that Sections 1533.63 and 1533.301, Revised Code, are a proper exercise of that power. The rationale of the exercise of the power to the Division of Wildlife is that it operates as a shield against covert depletion of the local supply, thus tending to effectuate the policy of the law by render-

ing evasion of it less easy. See *Bayside Fish Flour Co.* v. *Gentry*, 297 U. S. 422, 80 L. Ed. 772, 56 S. Ct. 513.

The defendant herein testified that he knew of all the legal requirements as to length, permits, etc., and had previously obtained permits in Ohio and other states.

In *Roth* v. *State*, 51 Ohio St. 209, the court upheld a statute making it an offense to sell quail out of season although lawfully killed outside the state, and that the statute was constitutional. In *Salasnek Fisheries, Inc.*, v. *Cashner*, 9 Ohio App. 2d 233, the syllabus states:

"1. The ownership of wildlife is in the state, which has the power and duty to preserve it for the benefit of all the people; individual rights therein are limited and are subject to police regulation. To that end, the state may regulate possession of fish and game within its borders, whatever their point of origin.

"2. The state may, in the exercise of its police power, forbid by statute the possession of fish smaller than a specified size, even though legally taken and possessed outside the state and thereafter brought into the state.

"3. In the proper enforcement of state conservation measures, any effect upon interstate commerce is incidental and inconsequential."

Also, see body of opinion at page 235 and citations set forth therein.

We are aware of *State* v. *Euclid Fish Co.*, 95 Ohio Law Abs. 1, and are able to distinguish it on its facts which involved frozen fish packed in boxes impossible of inspection.

Whatever of harshness in upholding the judgments of conviction herein based on the reasoning and authority contained in the citations, *supra,* is tempered by the wisdom of the trial court in suspending the fines assessed herein.

The judgments of the trial court are affirmed.

*Judgments affirmed.*

LONG, P. J., concurs.

SHANNON, J., dissenting. While agreeing wholeheartedly with the aims and purposes of Ohio conservation laws, I must dissent from the judgment reached by my colleagues in this case.

The defendant in this case was a marked man from the time he loaded the fish in question upon his trucks in Canada. One of the game agents who testified for the prosecution admitted that Canadian authorities contacted Ohio state authorities, who relayed the information to the witness, to advise that defendant had purchased the walleye pike.

It is significant to me that this witness stated that, when the fish passed through customs into United States, Michigan authorities "did not touch them because of the interstate commerce."

Subsequently, this witness said, "Yes, you could take them through Ohio."

Although it is theorized that these pike spawn in Lake Erie and swim to Lake St. Clair from which body of water apparently they were taken to be sold to defendant, there is absolutely no proof in the record that these were at any time before capture Ohio fish.

We must, then, ask ourselves if they ever became such.

It is uncontroverted that the fish were never unloaded until seizure but always remained in the tanks upon the trucks. The Ohio Legislature contemplated, in enacting Section 1533.301 (A), Revised Code, that fish so contained would not become Ohio fish. In part, Section 1533.-301 (A) provides:

"* * * A fish is not to be considered unloaded for purposes of this section if it remains under the control of a common carrier."

It seems clear to this writer that the Division of Wildlife seized these fish on the assumption that they were to be delivered in Ohio.

Let it be understood that there is no quibble with the law cited in the majority opinion, but the case at bar upon its facts not in dispute does not come within the purview

of those authorities. Certainly, it is clearly distinguishable from the situation in *Salasnek Fisheries, Inc.,* v. *Cashner,* 9 Ohio App. 2d 233, upon which my brothers rely. In the latter case, the fish of illegal size were under control of Ohio authorities because they were packaged and placed for wholesale and retail sale in Ohio.

The conclusion reached by this writer rests upon the facts established and must not be interpreted to forecast what might be the result had the fish been placed in a lake. But, the circumstances under which the seizure in the case at bar was accomplished, coming as it did at 1:30 a. m. upon a public highway at a point relatively close to Ohio's border, with the arresting authorities having full knowledge of the wildlife possessed by the defendant, no warnings having been given defendant before he was interrogated and the fish inspected, nothing having been adduced to rebut his testimony that the fish were never to be taken off the trucks in Ohio and were beyond doubt then in interstate commerce, compel the reversal of the judgment below.

Since 1533.301, Revised Code, under the facts here, provides that no transportation permit was needed by defendant, his conviction of failure to have a transportation permit is contrary to law.

The conviction of defendant of the charge of possession of undersized fish is contrary to law because the seizure thereof constituted an interference with interstate commerce and had no reasonable connection with the conservation of Ohio wildlife.

The fact that the trial judge mitigated the penalty by suspending the fines is of no moment. The convictions are clearly erroneous and should be set aside and the defendant dismissed.